IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:22-cv-979

| | |
|---|---|
| Joyce Sutton, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Healthcare Revenue Recovery Group, ) | **COMPLAINT WITH** |
| LLC, ) | **JURY TRIAL DEMAND** |
| ) | |
| Defendant ) | |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and North Carolina Collection Agency Act ("NCCAA"), N.C.Gen.Stat. § 58-70-90 *et seq.*

## PARTIES

1. Plaintiff Joyce Sutton is a natural person who resides in Person County, North Carolina.

1

2. Plaintiff is a 61-year-old woman with deteriorating health. She is disabled, unable to engage in competitive employment, and is in the process of obtaining disability insurance benefits through the Social Security Administration.

3. Plaintiff is allegedly obligated to pay a consumer debt arising out of medical services ("the Debt"), which is a "debt" as defined by 15 U.S.C. § 1692a(5) and N.C.Gen.Stat. § 58-70-90(3).

4. Plaintiff is a "consumer", as defined by 15 U.S.C. § 1692a(3) and N.C.Gen.Stat. § 58-70-90(2).

5. Defendant Healthcare Revenue Recovery Group, LLC, ("Defendant") is a corporation with a principal office in Florida.

6. Defendant maintains a registered agent in Raleigh, North Carolina.

7. Defendant is a collection agency specializing in the collection of consumer debt.

8. Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

9. Defendant manages, and collects upon, thousands of consumer debt accounts annually.

10. Defendant is engaged in the collection of debts from consumers using the mail and telephone.

2

11. Defendant regularly attempts to collect consumer debts alleged to be due to another.

12. Defendant engages, directly or indirectly, in debt collection from consumers.

13. Defendant holds a collection agency permit issued by the North Carolina Department of Insurance.

14. Defendant is a "debt collector," as defined by 15 U.S.C. § 1692a(6).

15. Defendant is a "collection agency," as defined by N.C.Gen.Stat. §§ 58-70-15(a) and 58-70-90(1).

## JURISDICTION AND VENUE

16. Jurisdiction arises pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Supplemental jurisdiction over state law claims arises pursuant to 28 U.S.C. § 1367.

17. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

18. Over the last two years, the Plaintiff has received numerous contacts from various collection agencies including the Defendant.

19. Defendant obtained the Debt after it entered default.

20. On or about November 17th, 2021, the Plaintiff initiated a call to the Defendant in an effort to obtain more information about any account or accounts it may have in collection. At that time, she was connected with an individual identifying himself as "Richard" and a representative of the Defendant.

21. After verifying the Plaintiff's identity, the Defendant informed her that it had two accounts in collection, both originating with Emergency Coverage Corp. The first was in the amount of $190.06 for treatment rendered on February 27, 2017. The second was in the amount of $711.00 and arose from treatment provided on September 22, 2020.

22. Defendant advised the Plaintiff that it would like to help her with these accounts as they have not been sent to a third-party collection agency at that time. Specifically, Defendant advised the Plaintiff that it could offer her a "settlement," reducing the balance of the account originating in 2017 by 30%.

23. The Plaintiff responded she was simply trying to gather information at that time and asked if the accounts were being reported to any credit bureau.

24. Defendant responded by saying that neither account had been reported at that time, but that both accounts were in "jeopardy," and explained that at any point in time the medical provider can close the accounts and sell them to a third-party collection agency. If that were to occur, per the Defendant, Plaintiff would have to deal

4

with the third-party, who would report them to her credit file. Further, Defendant warned Plaintiff that if the account was sold there could be interest charged, and processing fees that would be added to the accounts. Defendant warned that in some cases they may even try to garnish the Plaintiff's wages and affect her income tax refund.

25. The Defendant then offered her a "settlement" of both accounts at 50 cents on the dollar. The Defendant cautioned the Plaintiff that this was a time sensitive offer and that the medical providers were trying to help folks out as a result of the pandemic and that funds allocated for this purpose, meaning the reduction of debts owed, were being depleted on a daily basis. He concluded by telling the Plaintiff that if she did not take advantage of this offer, those savings would be allocated to some other consumer. The call ended shortly thereafter.

26. Plaintiff also told Defendant that, due to her work schedule, she was not available between 12:00pm and 8:00pm, and requested that Defendant only call her in the morning. Defendant stated that it uses an automatic dialer and cannot schedule calls between certain hours. Defendant's statement was inconsistent with the FDCPA's prohibition on a debt collector communicating with a consumer at a time known to be inconvenient to the consumer. *See* 15 U.S.C. § 1692c(a)(1).

5

27. The Defendant's representations caused the Plaintiff a significant amount of worry and anxiety.

28. Based on her personal experience and the ordinary usage of the term "settle" related to her other consumer debt the Plaintiff understood this to mean that the claims being collected by the Defendant were subject to suit thus generating a "settlement offer".

29. Plaintiff devoted considerable time and effort trying to raise the settlement money before facing the dire consequences described by the Defendant. This included seeking funds from friends and family, causing her significant embarrassment.

30. The accounts in collection by the Defendant are based, at least in part, on medical services that were provided in February, 2017.

31. The account in collection with the Defendant is subject to a statute of limitations is three years per N.C.Gen.Stat. § 1-52.

32. Upon information and belief, the statute of limitations applicable to the Debts expired no later than March 1, 2020.

33. Accordingly, the Defendant's claim is not subject to enforcement through legal action. Whether a debt is barred by an applicable statute of limitations is fundamental to the debt's character and legal status. See *Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1260 (11th Cir. 2014)* (explaining the significance to debtors of

statutes of limitations in determining a debt's legal status), *cert. denied*, *135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015)*.

34. A communication from a creditor offering a "settlement" on a debt that is time-barred creates confusion about a creditor's right to sue and violates § 1692e(2)(A). *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393 (6th Cir. 2015) *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016)

35. An offer to 'resolve' a time-barred debt, combined with a deadline to accept the reduced-payment offer and a warning that the offer might not be renewed if payment is not timely made has been found to plausibly deceive or mislead an unsophisticated consumer as to the legal status of the debt, even in the absence of an express threat of litigation. *Holzman v. Malcolm S. Gerald & Associates, Inc.*, 920 F.3d 1264, 1271 (11th Cir. 2019)

36. At no time during their communications did the Defendant advise the Plaintiff that the applicable statute of limitations had expired or that it could be revived as a result of Plaintiff complying with its requests to begin partial payments.

37. The Plaintiff's fear was reinforced by Defendant's representation that if she did not avail herself of this "settlement opportunity," she could face additional fees and legal action that would include garnishment of her wages.

7

## INJURIES-IN-FACT AND DAMAGES

38. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 WL 3611543 (11th Cir. 2016).

39. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, 654 Fed. Appx. at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

40. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

41. Defendant has subjected Plaintiff to false, deceptive, and unfair means to collect the debt.

42. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.) Being subjected to false, deceptive, and unfair debt collection practices;

8

b.) Uncompensated time expended away from activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

c.) Anxiety and worry caused by concern that Plaintiff was "missing out" on a substantial settlement opportunity that would leave her subject to legal process;

d.) Anxiety and worry caused by Defendant's refusal to acknowledge that it would comply with an express requirement of the FDCPA by calling Plaintiff only during the time frames she was available (which was a quite reasonable time frame of 12pm – 8pm); and

e.) Anxiety and worry caused by concern that Plaintiff was going to incur interest, fees, and be garnished for the accounts in collection, despite the fact that garnishment for a medical debt is not even permitted in North Carolina. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect her demeanor, her ability to engage in daily activities, resulted in sleeplessness, and adversely affected her relationships with others.

43. Accordingly, through the violation of Plaintiff's statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 *et. seq.*

*Violations of 15 U.SC. § 1692e and its subparts*

44. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

45. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

46. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e). Section 1692e forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection, and provides a non-exhaustive list of prohibited conduct." *United States v. National Financial Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

47. "Violations of Section 1692e are viewed from the perspective of the "least sophisticated consumer." *National Financial Servs.*, 98 F.3d at 135-36. "[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with

basic consumer-protection principles." *Id.* at 136. The purpose of that standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 136 *quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1983). Indeed, its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

48. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

49. Defendant's representations or implications that led Plaintiff to believe that she could be subject to legal process as to the debt originating in 2017 was objectively false and a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

50. Defendant's representations that assignment of the debts by the creditor to a third party would result in Plaintiff incurring interest charges and processing fees was objectively false and materially misleading and were a violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

11

51. Defendant's representations that assignment of the debts by the creditor to a third party could result in Plaintiff being garnished was objectively false and materially misleading and were a violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

52. Defendant's representations that it cannot schedule calls during a certain time frame was objectively false and materially misleading and were a violation of 15 U.S.C. §§ 1692e and 1692e(10).

*Violations of 15 U.SC. § 1692f and its subparts*

53. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon perceived lack of sophistication of the Plaintiff.

54. Defendant's conduct violated 15 U.S.C. § 1692f.

55. Plaintiff expended a significant amount of time trying to raise the money necessary to avoid the dire consequences described by the Defendant, including attempting to borrow money from friends and family despite the embarrassment that entailed.

## COUNT II

## VIOLATIONS OF THE
## NORTH CAROLINA COLLECTION AGENCY ACT
## N.C. Gen. Stat. § 58-70-90 *et. seq.*

56. The NCCAA shares similar purposes and provisions with the FDCPA, including the prohibition of false, deceptive, and misleading representations, *Cf.* N.C. Gen. Stat. § 58-70-110 and 15 U.S.C. § 1692e, and unfair practices. *Cf.* N.C. Gen. Stat. § 58-70-115 and 15 U.S.C. § 1692f. As such, the FDCPA standards established by the Fourth Circuit may be used as a model for analyzing collection agency communications under the NCCAA. *See DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 763 (M.D.N.C. 2003).

57. North Carolina "hold[s] debt collection agencies regulated under Chapter 58 to a higher standard ... than the standard to which other entities engaged in debt collection are held under" other state statutes. *Simmons v. Kross Lieberman & Stone, Inc.*, 746 S.E.2d 311, 316 (N.C. Ct. App. 2013).

58. Plaintiff brings this action against Defendant under Section 58-70-130(b) of the NCCAA, "which authorizes debtors to recover a statutory penalty of between $500 to $4,000 for each violation of the Act by a debt collector." *Townes v. Portfolio Recovery Associates, LLC*, 275 N.C. App. 939, 943, (N.C. Ct. App. 2020).

59. "Damages under the FDCPA do not preclude damages under relevant state law." *In re Baie*, 2011 WL 1257148, at *4 (Bankr. E.D.N.C. Mar. 30, 2011)

*Violations of N.C. Gen. Stat. § 58-70-110*

60. Section 110 of the North Carolina Collection Agency Act prohibits a collection agency from attempting to collect a debt by using any fraudulent, deceptive or misleading representation.

61. Defendant's acts and omissions as set forth herein constitute deceptive and misleading representations.

*Violations of N.C. Gen. Stat. § 58-70-115*

62. Section 115 of the North Carolina Collection Agency Act prohibits a collection agency from attempting to collect a debt by using any unfair practices.

63. Defendant's acts and omissions as set forth herein constitute unfair practices.

**TRIAL BY JURY**

64. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff Joyce Sutton prays that judgment be entered against Defendant Healthcare Revenue Recovery Group, LLC for:

a.) Plaintiff's actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and N.C. Gen. Stat. § 58-70-130(a);

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Civil penalties, pursuant to N.C. Gen. Stat. § 58-70-130(b);

d) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and N.C. Gen. Stat. § 75-16.1; and

e) Such other and further relief as may be just and proper.

Respectfully submitted this 15th day of November, 2022.

/s/ Craig M. Shapiro
Craig M. Shapiro (State Bar # 48887)
Law Offices of John T. Orcutt, P.C.
1738 Hillandale Rd, Suite D
Durham, North Carolina 27705
(919) 286-1695
cshapiro@johnorcutt.com

*Attorney for Plaintiff*